UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-80905-BLOOM/Valle

XP GLOBAL, INC.,

     Plaintiff,
v.

AVM, L.P.,

     Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant AVM, L.P.'s ("Defendant") Motion to Dismiss, ECF No. [17], seeking to dismiss Counts III, IV, V, VI, VII, and VIII of Plaintiff XP Global, Inc.'s ("Plaintiff") Complaint, ECF No. [1].[1] Defendant has also filed it Motion for Leave to File an Early Motion for Summary Judgment or Bifurcate Discovery, ECF No. [22]. The Court has carefully reviewed each Motion, all supporting and opposing submissions, the record in this case, and applicable law. For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part. The Motion for Leave to File an Early Motion for Summary Judgment or Bifurcate Discovery is denied.

### I. BACKGROUND

This action primarily involves financial transactions called repurchase agreements, also known as "repos," which are short-term financial arrangements in which cash is exchanged for collateral. Compl. ¶ 1. According to Plaintiff, in 2008, Plaintiff developed "revolutionary ideas" to fix problems with the repo market largely through a repo exchange. *Id.* Around December

---

[1] Although Defendant has requested a hearing, *see* Mot. at 15, the Court does not find that disposition of the instant Motion requires oral argument.

2008, Plaintiff's owner and Chief Executive Officer, Michael Carbonella, met with Jeff Kidwell, one of Defendant's employees, during which time Mr. Carbonella provided Mr. Kidwell with basic details about Plaintiff's idea. *Id.* ¶¶ 14-17. Mr. Carbonella specifically told Mr. Kidwell that everything being communicated needed to be kept confidential, to which Mr. Kidwell agreed. *Id.* ¶ 17. Mr. Carbonella and Mr. Kidwell soon after met and continued their "high-level" discussions about Plaintiff's ideas, and a formal meeting between Plaintiff and Defendant was arranged for January 29, 2009. *Id.* ¶¶ 24-35. Prior to this meeting, on January 29, 2009, Plaintiff and Defendant entered into a Mutual Confidentiality Agreement (the "Agreement"). *Id.* ¶¶ 26-28; *see also* Ex. A, ECF No. [1] at 29-30. The Agreement provided, *inter alia* that "the parties agree that the Information [exchanged by the parties] will be kept confidential and will not be utilized without some further agreement of compensation by the Receiving Party [*i.e.* Defendant] . . . ." Ex. A at 29. That same day, after the Agreement was signed, Plaintiff gave Defendant a detailed presentation about its ideas, including specific details about the repo exchange that Plaintiff asserts it would not have disclosed if Defendant had not signed the Agreement. Compl. ¶¶ 31-32.

Plaintiff alleges that following the January 29, 2009 meeting, Defendant immediately starting working to implement Plaintiff's ideas without including or informing Plaintiff, in violation of the Agreement. *Id.* ¶ 37. According to Plaintiff, on February 13, 2009, Mr. Kidwell, on behalf of Defendant, met with the New York Mercantile Exchange and the New York Stock Exchange on February 13, 2009 and March 12, 2009, respectively, about a repo exchange, including implementing Plaintiff's ideas. *Id.* ¶¶ 39-41. Around March 2009, Defendant also met with Bank of New York about the repo exchange and on May 5, 2009 Defendant hired a new employee to spearhead the repo exchange. *Id.* ¶¶ 45, 53. Defendant also held a meeting with the

Federal Reserve. *Id.* ¶ 51. Plaintiff alleges that Defendant never told Plaintiff about any of these meetings and "deliberately hid" its conduct from Plaintiff. *Id.* ¶ 56.

Plaintiff alleges that Defendant used Plaintiff's ideas to create its repo exchange product, AVM DRX. ¶ 63. Defendant purportedly does $80 billion in daily repo transactions. *Id.* ¶ 64. According to Plaintiff, Defendant entered into confidential agreements with third parties such as the Federal Reserve and BNY Mellon to use Plaintiff's ideas to create repo exchanges, which were launched in 2013. *Id.* ¶ 65. Plaintiff alleges that Defendant has "earned and continues to earn revenue from those agreements, and thus from [Plaintiff's] ideas." *Id.* ¶ 66. In 2014, a whistleblower allegedly told Mr. Carbonella about Defendant's conduct, which Plaintiff maintains it did not know, and could not have known, because Defendant "hid its unlawful conduct" from Plaintiff. *Id.* ¶ 68-69.

Plaintiff asserts eight counts against Defendant, including misappropriation of trade secrets pursuant to 18 U.S.C. §§ 1836 and 1839 (Count I) and Fla. Stat. § 688.001 (Count II); breach of contract (Count III); breach of fiduciary duty (Count IV); fraud (Count V); constructive fraud (Count VI); conversion (Count VII); and unjust enrichment (Count VIII). Plaintiff moves to dismiss Counts III through VIII.

## II. LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). Although the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted).

### III. DISCUSSION

#### A. Statute of Limitations

Defendant moves to dismiss Plaintiff's claims for breach of contract (Count III), breach of fiduciary duty (Count IV), conversion (Count VII), and unjust enrichment (Count VIII) as time-barred under the applicable statutes of limitations. "Generally, whether a claim is barred by the statute of limitations should be raised as an affirmative defense in the answer rather than in a motion to dismiss. . . . However, if facts on the face of the pleadings show that the statute of limitations bars the action, the defense can be raised by motion to dismiss." *Spadaro v. City of*

*Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012) (citing *Cabral v. City of Miami Beach,* 76 So.3d 324, 326 (Fla. 3d DCA 2011); *see also Keira v. U.S. Postal Inspection Serv.*, 157 F. App'x 135, 136 (11th Cir. 2005) ("At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute.") (internal quotation marks and citation omitted).

Defendant argues that these claims are each contingent on the allegation that Defendant immediately disclosed and utilized Plaintiff's confidential information, meaning that these allegations would have given rise to causes of action no later than May 5, 2009, the last date on which Plaintiff alleges any disclosure on the part of Defendant, and placing these claims well beyond their applicable statutes of limitation. *See* Mot. at 6 (citing Fla. Stat. § 95.11(2)(b) (five-year statute of limitations for breach of contract); *Xavier v. Leviev Boymelgreen Marquis Developers, LLC*, 117 So. 3d 773, 775 (Fla. 3d DCA 2012) (four-year statute of limitations for conversion and unjust enrichment); *Patten v. Winderman*, 965 So. 2d 1222, 1223-24 (Fla. 4th DCA 2007) (four-year statute of limitations for fiduciary duty)). Both parties agree that the delayed-discovery doctrine does not apply to Plaintiff's breach of contract, breach of fiduciary duty, conversion, and unjust enrichment claims. *See* Mot. at 7; Resp., ECF No. [26] at 10 ("Global's claims for breach of contract, breach of fiduciary duty, conversion, and unjust enrichment do not rely on the delayed-discovery doctrine."). Rather, Plaintiff argues that these claims are timely under the continuing breach and continuing tort doctrines.

"The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Robinson v. United States*, 327 F. App'x 816, 818 (11th Cir. 2007). "The critical distinction in continuing violation analysis . . . is whether the plaintiff[ ] complain[s] of the present consequence of a one

time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does." *Id.* (quoting *Lovett v. Ray,* 327 F.3d 1181, 1183 (11th Cir. 2003)). "When the plaintiff proves a continuing violation, the plaintiff may 'recover for any violations for which the statute of limitations has not expired.'" *Id.* (quoting *Knight v. Columbus, Ga.,* 19 F.3d 579, 581 (11th Cir. 1994)).

Under the continuing breach doctrine, "a cause of action for breach of a contract does not begin to accrue upon the initial breach; rather, on contracts providing serial performance by the parties, accrual of a breach of contract cause of action commences upon the occurrence of the last breach or upon termination of the contract." *Allapattah Servs., Inc. v. Exxon Corp.*, 188 F.R.D. 667, 679 (S.D. Fla. 1999), *aff'd,* 333 F.3d 1248 (11th Cir. 2003), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005); *see also Roberta L. Marcus, Inc. v. New Cingular Wireless PCS, LLC*, No. 12-20744-CIV, 2013 WL 12093810, at *3 (S.D. Fla. Apr. 29, 2013) ("The continuing-wrong doctrine . . . only applies to a breach-of-contract claim in circumstances where there are continuing obligations under the contract."); *Arlaine & Gina Rockey, Inc. v. Cordis Corp.*, No. 02-22555-CIV, 2004 WL 5504978, at *49, n. 15 (S.D. Fla. Jan. 5, 2004) ("The 'continuing breach' doctrine . . . only applies to contracts calling for a single, continuous performance; it does not apply to contracts like the License Agreement that call for performance (*i.e.,* royalty payments) in separate and distinct installments.")

Defendant argues that Plaintiff has failed to make such a showing and that the continuing breach doctrine is inapplicable. This is because the purported breach—the disclosure of information—occurred in 2009 and accrual does not continue indefinitely or re-accrue upon subsequent disclosure. Although Plaintiff indeed alleges that these initial disclosures occurred in

2009, Plaintiff has also alleged—and the Agreement specifically prohibited—Defendant's use of the confidential information. Plaintiff argues that the Agreement placed a continuing obligation on Defendant not to use Plaintiff's information, which is not a severable obligation. *See* Ex. A at 29 ("the parties agree that the Information [exchanged by the parties] will be kept confidential and will not be utilized without some further agreement of compensation by the Receiving Party [*i.e.* Defendant]."); *id.* at 30 ("The parties further acknowledge that any unauthorized use or disclosure of the Information may cause irreparable damage to the Disclosing Party, and that consequently, the Disclosing Party shall have the right to injunctive relief or other equitable relief to prevent or stop such use or disclosure, and to other legal and equitable relief for the actual damages occasioned thereby."). Plaintiff has alleged that Defendant has used Plaintiff's ideas to create a repo exchange product, AVM DRX. Compl. ¶ 63. Plaintiff further alleges that Defendant entered into confidential agreements with third parties to use Plaintiff's ideas to create repo exchanges that were launched in 2013. *Id.* ¶ 65; *see also id.* ¶ 106(b) ("AVM breached, and is breaching, the Agreement, including by: . . . [u]sing Global's confidential information and Trade Secrets, including . . . in connection with licensing that information to third parties and in connection with AVM DRX.").

At this stage of the pleadings, and accepting Plaintiff's allegations as true, Plaintiff has sufficiently asserted that Defendant's alleged continued use of the confidential information may amount to a continuing breach of the Agreement, which, if demonstrated, would toll the statute of limitations on Plaintiff's breach of contract claim. *Keira*, 157 F. App'x at 136 ("At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute.") (internal quotation marks and citation omitted).

Similarly, the continuing tort doctrine "distinguishes between a single act that causes multiple, cascading harms, and recurrent, repetitive acts excepted from the running of the statute of limitations: 'A continuing tort is 'established by continual tortious *acts*, not by continual harmful effects from an original, completed act.'" *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1042 (11th Cir. 2014) (quoting *Suarez v. City of Tampa,* 987 So.2d 681, 686 (Fla. 2d DCA 2008)). "Under this doctrine, the limitations period runs to the date the tortious conduct ceases. . . . If the plaintiff has alleged some continuing conduct on the part of the defendants, a jury must decide whether a continuing tort has occurred." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1330 (S.D. Fla. 2012) (internal citations omitted). Plaintiff has alleged Defendant's continued use of Plaintiff's confidential information and ideas, amounting to a continual tortious act. *See* Compl. ¶ 118 ("AVM violated its fiduciary duty to Global, including by disclosing and using Global's confidential information for AVM's sole benefit, without Global's knowledge or consent."); *id.* ¶ 150 ("AVM wrongfully exercised dominion over, and continues to wrongfully exercise dominion over, Global's confidential information, thereby wrongfully depriving Global of Global's confidential information."); ¶¶ 157-160 ("Global provided AVM with benefits, *i.e.* access to Global's confidential information . . . [and] [u]nder these circumstances, it would be inequitable for AVM to retain the benefits provided by Global, and the proceeds AVM earned, is earning, and will earn thereon."). Accordingly, Defendant's motion to dismiss Counts III, IV, VII, and VIII as time-barred is denied.

**B. Independent Tort Doctrine**

Defendant also seeks dismissal of Plaintiff's claims for breach of fiduciary duty (Count IV), fraud (Count V), constructive fraud (Count VI), conversion (Count VII), and unjust enrichment (Count VIII) because they, according to Defendant, are not independent of Plaintiff's

claim for breach of contract. The Florida Supreme Court has limited the application of the economic loss rule to products liability cases. *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399 (Fla. 2013). However, "*Tiara* did not upset 'fundamental contractual principles' which continue to delineate the general boundary between contract law and tort law regardless of the breadth of the economic loss doctrine." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302 (S.D. Fla. 2014) (citing *Tiara*, 110 So. 3d at 408 (Pariente, J., concurring)). That is, "[f]undamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." *Freeman v. Sharpe Res. Corp.*, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (citing *Tiara*, 110 So. 3d at 407-09). Certainly, though, a tort claim can be stated alongside a claim for breach of contract where the plaintiff has alleged conduct that does not itself constitute breach of the contract at issue.

**1. Breach of Fiduciary Duty**

"The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) breach of a duty owed by the fiduciary; and (3) proximate cause." *Combe v. Flocar Inv. Grp. Corp.*, 977 F. Supp. 2d 1301, 1307 (S.D. Fla. 2013) (citing *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002)). "[A] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation." *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002). Plaintiff alleges that Defendant breached a fiduciary duty, which Plaintiff was owed because Defendant had possession of and unique access to Plaintiff's confidential information. Compl. ¶¶ 113-14, 117. Plaintiff alleges that Defendant exercised dominion and influence over Plaintiff, as Defendant

had power within the repo industry and financial industry as a whole, as well as relationships with third parties such as the Federal Reserve and GNY Mellon. *Id.* ¶ 117.

Defendant argues that the fact that one party has "'greater bargaining power by virtue of its . . . economic status is not sufficient by itself to impose a fiduciary obligation[.]'" Reply at 6, ECF No. [30] at 6 (quoting *White Const. Co. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1325, n. 26) (M.D. Fla. 2009)). Defendant further argues that the Complaint states that Mr. Carbonella sought out Defendant, not vice-versa, and that Mr. Carbonella would not provide even basic details about Plaintiff's ideas absent a confidentiality agreement. These facts, according to Defendant, refute any allegation that Plaintiff was somehow subject to Defendant's influence.

Plaintiff has failed to set forth sufficient facts to demonstrate that a fiduciary relationship existed outside of the Agreement, including, *inter alia*, how Defendant's possession of Plaintiff's confidential information or Defendant's greater bargaining power created a fiduciary relationship. Accordingly, Count IV is dismissed, with leave to amend to correct the deficiencies stated herein.

**2. Conversion**

Defendant also seeks dismissal of Plaintiff's claim for conversion. Plaintiff has alleged that Defendant has and continues to wrongfully exercise dominion over Plaintiff's confidential information, thereby wrongfully depriving Plaintiff of Plaintiff's confidential information. Plaintiff further alleges that Defendant appropriated this confidential information for Defendant's own use, without Plaintiff's knowledge or consent. Compl. ¶¶ 150-51. Plaintiff argues that Defendant "did not simply fail to perform under the Agreement by using or disclosing Global's confidential information; AVM converted Global's confidential information for its own financial

gain." Resp. at 18 (citing *Alex Hofrichter, P.A. v. Zuckerman & Venditti, P.A.*, 710 So. 2d 127, 128 (Fla. 3d DCA 1998) ("In this case, the claim is that by intentional misconduct, Zuckerman embezzled or converted partnership property to his personal use. This is more than a claim for a simple breach of contract."); *Burke v. Napieracz,* 674 So.2d 756, 758-59 (Fla. 1st DCA 1996) ("Where, as here, it was not merely a failure to perform, but an affirmative and intentional act of converting the funds to his own use by allegedly stealing the monies [with] which he was entrusted, there is not merely a breach of contract but a separate and independent tort."); *Masvidal v. Ochoa*, 505 So. 2d 555, 556 (Fla. Dist. Ct. App. 1987) ("The evidence shows a classic embezzlement by the defendant of an escrow fund set up under the subscription agreement between the parties. That is, the defendant lawfully obtained possession of the plaintiff's funds to set up the escrow fund and thereafter converted the funds for his own use. This being so, the defendant, by his actions, committed an embezzlement, a civil theft and a conversion as well as a breach of contract.")).

Plaintiff's conversion claim, however, merely reiterates the precise alleged conduct that forms its claim for breach of contract—namely, that Defendant used and continues to use Plaintiff's confidential information without further agreement. The Court does not find that Plaintiff has alleged some additional, affirmative act beyond the breach of contract that is present in the cases relied upon by Plaintiff. Accordingly, Plaintiff's claim for conversion (Count VII) is dismissed.

### 3. Unjust Enrichment

"The elements of an unjust enrichment claim are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without

paying the value thereof." *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1242 n.4 (Fla. 2004) (quoting *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So. 2d 205, 207 (Fla. 2d DCA 1995)). "It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984). Therefore, an unjust enrichment claim is precluded by the existence of an express contract between the parties governing the subject matter in dispute. *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (An "unjust enrichment claim [is] precluded by the existence of an express contract between the parties concerning the same subject matter."); *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) ("As there is a valid express contract that no party challenges, Plaintiff may not recover under unjust enrichment, and may not assert it as an alternative claim . . . .").

Here, neither party challenges the existence of an express contract—the Agreement—governing the subject of the dispute. *See* Reply at 8 ("[H]ere, . . . no such denial [as to the existence of an express contract] has taken place."). Plaintiff's unjust enrichment claim is precluded by the existence of an express contract and Plaintiff may not assert it as an alternative claim. Accordingly, Plaintiff's claim for unjust enrichment (Count VIII) is dismissed.

### C. Fraud and Constructive Fraud

Defendant moves to dismiss Plaintiff's claims for fraud (Count V) and constructive fraud (Count VI), arguing that Plaintiff has failed to allege fraud that is distinct or independent from non-performance under the Agreement and that Plaintiff has failed to plead its claims for fraud with particularity pursuant to Fed. R. Civ. P. 9(b).

"Generally, the fraudulent statement must concern a past or existing fact." *Gemini*

*Investors III, L.P. v. Nunez*, 78 So. 3d 94, 97 (Fla. 3d DCA 2012). "However, if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform, such a promise may also constitute a fraudulent misrepresentation." *Prieto v. Smook, Inc.*, 97 So. 3d 916, 917-18 (Fla. 4th DCA 2012) (quoting *Mejia v. Jurich*, 781 So .2d 1175, 1177 (Fla. 3d DCA 2001)). Further, "[f]raud also includes the intentional omission of a material fact." *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001). "The classic illustration of fraud is where one party having superior knowledge intentionally fails to disclose a material fact, which is not discoverable by ordinary observation . . . ." *Nessim v. DeLoache*, 384 So. 2d 1341, 1344 (Fla. 3d DCA 1980) (citations omitted).

"Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely . . . but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1240 (Fla. 1996) (citation omitted).

> One who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud. When this happens and the defrauding party also refuses to perform the contract as it stands, he commits a second wrong, and a separate and distinct cause of action arises for the breach of contract. The same basic transaction gives rise to distinct and independent causes of action which may be consecutively pursued to satisfaction.

*Id.* at 1239 (citation omitted). "Florida courts have further explained that the decision in *HTP* allows an award of punitive damages for fraudulent inducement despite additional claims for breach of contract." *HGI Associates, Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 877 (11th Cir. 2005) (citing *Connecticut Gen. Life Ins. Co. v. Jones*, 764 So. 2d 677, 680-82 (Fla. 1st DCA 2000)).

In addition to the Rule 8(a) plausibility pleading requirement, Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) thus forces a plaintiff to "offer more than mere conjecture," *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and "requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) requires that the complaint state the "who, what, when where, and how" of the alleged misconduct). The purpose of the Rule 9(b) particularity requirement is to "alert [ ] defendants to the precise misconduct with which they are charged and protect[ ] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba*, 256 F.3d at 1202 (internal quotations omitted). "Essentially, the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) (quotations omitted); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) ("The rule ensures

14

that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. . . .") (quotations omitted).

"Under Florida law, the essential elements of a cause of action for fraud are: (1) a false statement of fact; (2) known by the defendant to be false at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage or injury. *Pitts Sales, Inc. v. King World Prods., Inc.*, 383 F. Supp. 2d 1354, 1362-63 (S.D. Fla. 2005) (citing *National Ventures, Inc. v. Water Glades 300 Condom. Ass'n*, 847 So. 2d 1070, 1074 (Fla. 4th DCA 2003); *Ward v. Atlantic Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001)).

### 1. Fraud

Plaintiff has alleged that Defendant—through representations made by Mr. Kidwell at the Christmas 2008 meeting with Mr. Carbonella and the lunch meeting shortly thereafter, representations made by Scott Wyler, Defendant's general counsel in connection with execution of the Agreement on January 29, 2009, and representations made by Mr. Kidwell and Mr. Doyle at the January 29, 2009 meeting—falsely represented that it would keep Plaintiff's information confidential. Compl. ¶¶ 124-26. Plaintiff asserts that Defendant "had no intention of keeping Global's confidential information confidential" and that, to the contrary, "immediately after obtaining this information, AVM set up meetings with third parties to disclose and use this information for AVM's benefit" and that Defendant hid this conduct from Plaintiff. *Id.* ¶ 126. Plaintiff alleges that Defendant made these misrepresentations to "(a) mislead Global into providing AVM with Global's confidential information, (b) trick Global into not pursuing its own use of this information, and (c) prevent Global from enforcing its legal rights under the Agreement and otherwise." *Id.* ¶ 127.

To the extent that Plaintiff alleges fraud in the inducement based upon Defendant's allegedly false representations that it would keep Plaintiff's information confidential, this is a promise of future performance, not a statement of past or present existing fact. Plaintiff argues that it has alleged that Defendant had no intention of keeping Plaintiff's information confidential, and therefore this promise may amount to a fraudulent misrepresentation. Plaintiff's bald assertion, without more, is not sufficient to state, much less with particularity, Defendant's intent not to keep a promise.

Plaintiff also argues that it has alleged fraud by omission. It is unclear, however, precisely what these omissions are and whether Plaintiff alleges that Defendant omitted material facts so as to induce Plaintiff to enter into the Agreement or whether these omissions are related to any alleged concealment of Defendant's actions in relation to Plaintiff's argument that it was prevented from enforcing its legal rights under the Agreement. In light of these ambiguities and general lack of clarity throughout the claim, Count V is dismissed with leave to amend to correct the deficiencies stated herein.

### 2. Constructive Fraud

"Under Florida law, constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) (internal quotation marks and citation omitted). "To state a claim for breach of a fiduciary or confidential relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Id.* (internal quotation marks and citation omitted). However, "[c]onstructive fraud will not lie where the parties are dealing at arms length because there is no duty imposed on either party to

protect or benefit the other." *Id.* Plaintiff asserts conclusory allegations that Plaintiff and Defendant "had a confidential and fiduciary relationship" under which Plaintiff provided Defendant with confidential information and Defendant undertook an obligation to keep that information confidential. As discussed *supra*, Plaintiff has not asserted sufficient factual support for its claim that a fiduciary relationship existed between the parties and that any duty existed outside of the Agreement. Accordingly, Count VI for constructive fraud is dismissed with leave to amend.

### D. Motion for Leave to File an Early Motion for Summary Judgment or, in the Alternative, to Bifurcate Discovery

Defendant has also filed its motion seeking leave to file an early motion for summary judgment on statute of limitations grounds without prejudice to Defendant's right to file a subsequent motion for summary judgment at the close of discovery. In the alternative, Defendant seeks bifurcated discovery on the issue of timeliness. *See* ECF No. [22]. Defendant argues that an early motion for summary judgment will dispose of the remainder of the case as time-barred. Specifically, Defendant argues that it is in possession of evidence in the form of written communications with Plaintiff as well as publicly available documents that belie Plaintiff's allegations of delayed discovery as to its claims relating to misappropriation of trade secrets and fraud. Plaintiff counters that these claims do not rely solely on the delayed-discovery doctrine, but also on the continuing violation doctrine. As discussed above, if applicable, this doctrine would serve to toll the statute of limitations. Addressing these doctrines requires a review of the evidence that is likely intertwined with the merits and bifurcation of discovery would serve to unnecessarily delay these proceedings. In the interest of judicial economy, Defendant's request is denied.

### IV. CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [17]**, is **GRANTED IN PART** and **DENIED IN PART**.

2. Counts VII (conversion) and VIII (unjust enrichment) of the Complaint, ECF No. [1], are **DISMISSED WITH PREJUDICE**.

3. Counts IV (fiduciary duty), V (fraud), and VI (constructive fraud) of the Complaint are **DISMISSED**, with leave to amend.

4. Plaintiff shall file an amended complaint on or before **September 27, 2016** and Defendant shall file its response to that amended complaint on or before **October 6, 2016**.

5. Defendant's Motion for Leave to File an Early Motion for Summary Judgment or Bifurcate Discovery, **ECF No. [22]**, is **DENIED**.

**DONE AND ORDERED** in Miami, Florida this 19th day of September, 2016.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record