UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:16-cv-80905-Bloom/Valle

XP GLOBAL, INC., a New York corporation

    Plaintiff,

v.

AVM, L.P., an Illinois limited partnership

    Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS COUNTS IV, V, AND VI OF PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE

Defendant AVM, L.P. ("AVM"), through counsel, and pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6), and Local Rule 7.1, hereby files its Motion to Dismiss Counts IV (breach of fiduciary duty), V (fraud), and VI (constructive fraud) of Plaintiff XP Global, Inc.'s ("plaintiff") Amended Complaint With Prejudice, and states as follows:

### PRELIMINARY STATEMENT

On September 19, 2016, this Court entered an Order (the "Decision") granting in part and denying in part AVM's motion to dismiss plaintiff's initial Complaint in this matter. (ECF No. 37.) The Court dismissed plaintiff's claims for conversion and unjust enrichment without leave to re-plead, and it dismissed plaintiff's claims for fiduciary duty, fraud, and constructive fraud with leave to re-plead. On September 27, 2016, plaintiff filed an Amended Complaint and reasserted the claims for fiduciary duty, fraud, and constructive fraud. (ECF No. 38.)

Plaintiff's scant additions to the Amended Complaint fail to cure the deficiencies that resulted in the Decision. Rather, the Amended Complaint reconfirms that plaintiff's common law tort claims are predicated entirely on plaintiff's assertion that AVM breached its obligations under the parties' Mutual Confidentiality Agreement (the "Agreement"). Consequently,

plaintiff's breach of fiduciary duty, fraud, and constructive fraud claims remain inextricably intertwined with plaintiff's claim for breach of contract.  Furthermore, with respect to fraud, plaintiff has pleaded no new facts.  Instead, plaintiff has re-pleaded the very same facts as the original Complaint, adding only speculative inferences that plaintiff wishes the Court to draw from those same facts.  Accordingly, plaintiff's remaining common law tort claims should now be dismissed with prejudice.

As relevant to this motion, the differences between the original Complaint and the Amended Complaint are: (1) the addition of paragraphs 115 and 128 to the Amended Complaint, and (2) the supplementation of paragraph 131.  None of those changes corrects the deficiencies identified in the Decision.  Certain other changes are, however, noteworthy.  For example, in paragraph 63 of the Amended Complaint, plaintiff now pleads that AVM DRX is a "Repo product" whereas it previously alleged that AVM DRX was a "Repo *exchange* product."  The deletion of the word "*exchange*," while accurately removed, is critical because plaintiff's original allegation concerning AVM DRX, albeit false, was a primary reason the Court found that plaintiff had sufficiently pleaded a continuing breach. (Decision at 7 (citing paragraphs 63 and 106(b) of the Complaint ("Plaintiff has alleged that Defendant has used Plaintiff's ideas to create *a repo exchange product*, AVM DRX … AVM breached, and is breaching the Agreement … in connection with *AVM DRX*.") (emphasis added))).)  An underpinning of that finding by the Court was thus erroneous because plaintiff has now corrected its false allegation.[1]

---

[1] AVM submits that the Court would be permitted to reconsider that finding under FRCP 60.  In the interest of efficiency, however, AVM is not moving for reconsideration because the Court also cited paragraph 65 of the original Complaint in support of its finding.  (Decision at 7.)  While that allegation and many others in the Amended Complaint are baseless, AVM recognizes a motion to dismiss is not the avenue to address such issues.  Nonetheless, from a pleading and plausibility standpoint under FRCP 8 and 9, plaintiff's retreat from its own allegations concerning a "Repo exchange" is telling, since plaintiff's case is predicated on its supposed

**LEGAL ARGUMENT**

**I.    PLAINTIFF'S COMMON LAW TORT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM.**

Plaintiff's claims for breach of fiduciary duty (Count IV), fraud (Count V), and constructive fraud (Count VI) should be dismissed because they are not independent of plaintiff's claim for breach of contract.  Moreover, even after amendment, those claims fall far short of the applicable pleading standards.  Despite plaintiff's attempt to insert additional allegations, plaintiff's tort theories are still entirely duplicative and derivative of its breach of contract claim and should, therefore, be dismissed with prejudice.

**A. Plaintiff's Claim for Breach of Fiduciary Duty Must Be Dismissed Pursuant to the Independent Tort Doctrine.**

When two parties are in contractual privity, a breach of fiduciary duty claim must be independent from a breach of contract claim.  *BGW Design Ltd., Inc. v. Serv. Am. Corp.*, No. 10-20730, 2010 WL 5014289, at *6 (S.D. Fla. Dec. 3, 2010); *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1317-18 (S.D. Fla. 2002); *Clayton v. State Farm Mut. Auto. Ins. Co.*, 729 So. 2d 1012, 1013-14 (Fla. 3d DCA 1999).  Claims are "inextricably intertwined" if the representations that form the basis of the breach of the fiduciary duty claim are contemplated by the contract or if the conduct that forms the basis of the claims is the same. *See Excess Risk Underwriters, Inc.*, 208 F. Supp. 2d at 1317-18 (dismissing a breach of fiduciary

---

innovations and ideas *for a repo exchange*. (*See, e.g.*, Amended Compl. ¶¶ 13, 32, 39, 41, 46-50, 52, 53, 72).  By way of further illustration, in addition to paragraph 63, plaintiff also materially changed the allegation in paragraph 61 of the original Complaint to remove the word "exchange." (ECF No. 1.)  That paragraph previously stated (falsely) that AVM did not begin referring to a "Repo exchange" in its internal documents until after AVM learned of plaintiff's ideas.  In the Amended Complaint, plaintiff deleted the word "exchange" and now vaguely contends that after learning about plaintiff's ideas, AVM "changed language in its internal documents to reflect [plaintiff's] ideas."  (Am. Compl. ¶ 61.)  While that allegation is also erroneous, it is immaterial in any event.  The point of the Agreement was for plaintiff and AVM to exchange confidential information.  Therefore, reference to such information in either party's *internal* documents certainly does not evidence a breach of the Agreement.

duty claim because the plaintiff did not allege facts independent of the breach of contract claim); *see also BGW Design Ltd., Inc.*, 2010 WL 5014289, at *6 (dismissing breach of fiduciary duty claim because the plaintiff alleged the same injury as it did in its breach of contract claim); *Branch Banking & Trust Co. v. U.S. Bank Nat. Ass'n*, No. 07-80508-CIV, 2008 WL 4186982, at *4-5 (S.D. Fla. Sept. 8, 2008) (dismissing breach of fiduciary duty claim because it was merely duplicative of a breach of contract claim); *Branch Banking & Trust Co. v. U.S. Bank Nat. Ass'n*, No. 07-80508-CIV, 2009 WL 1324163, at *2 (S.D. Fla. May 13, 2009) (dismissing amended breach of fiduciary duty claim because the "amended allegations [were] a mere restatement of the contractual duties set forth" in the underlying agreement).

Here, as the Court held with respect to the original Complaint, plaintiff "failed to set forth sufficient facts to demonstrate that a fiduciary relationship existed outside of the Agreement, including, *inter alia*, how Defendant's possession of Plaintiff's confidential information or Defendant's greater bargaining power created a fiduciary relationship." (Decision at 10.)  In an attempt to cure that deficiency, plaintiff now formulaically adds that, during the previously alleged meetings between Mr. Kidwell and Michael Carbonella that occurred nearly eight years ago, Mr. Kidwell indicated to Mr. Carbonella: "that AVM would use [plaintiff's] confidential information to benefit [plaintiff]"; that Mr. Kidwell "recognized that [plaintiff] did not have the connections in the Repo industry to effectively implement [plaintiff's] ideas"; that AVM "would use its experience, reputation, and connections in the Repo industry to help [plaintiff] implement its ideas – to the benefit of [plaintiff], on [plaintiff's] behalf, and in [plaintiff's] best interests"; and that AVM would "guide and advise" plaintiff on how to do so. (Am. Compl. ¶ 115.)

As an initial matter, the Amended Complaint taken as a whole belies the formation of any fiduciary relationship and, if anything, underscores the insufficiency and implausibility of

-4-

plaintiff's allegations in the new paragraph 115.  In December 2008, plaintiff's CEO, Mr. Carbonella, approached Mr. Kidwell (not vice versa) in an attempt *by plaintiff* to do business with AVM.  (*See* Decision at 2, 10; Am. Compl. ¶ 17.)  Plaintiff, under Mr. Carbonella's direction, proceeded to: (1) require an oral confidentiality agreement before sharing even its basic concepts with AVM, and (2) insist on the integrated written Agreement a month later, which was mutual and made no mention of any of plaintiff's newly pleaded statements.  (Am. Compl. ¶¶ 26-31.)  Tellingly, in filing the original complaint over seven years after the December 2008 meetings, plaintiff omitted any mention of the newly pleaded statements, only to include them nearly eight years after the meetings when its breach of fiduciary duty claim was dismissed with leave to re-plead.  Under FRCP 8, the Court need not, and AVM submits should not, credit plaintiff's rote allegation in paragraph 115 of the Amended Complaint.  (*See* Decision at 3 ("a complaint ... must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).)  Rather, the facts pleaded throughout the Amended Complaint demonstrate plainly – as did the original Complaint – that plaintiff and AVM entered into the Agreement, which contained *mutual* use and confidentiality obligations, at *arm's-length*.  AVM did not intend to, and certainly was not obligated to, act as plaintiff's fiduciary.

Furthermore, despite the guidance provided in the Decision, the Amended Complaint does nothing to illuminate, factually, how a fiduciary relationship existed outside the Agreement, including, how AVM's greater bargaining position or possession of plaintiff's confidential information pursuant to the Agreement created fiduciary obligations on AVM.  Again, "[t]he fact that [a defendant] stands in a position of greater bargaining power by virtue of its ... economic status *is not sufficient* by itself to impose a fiduciary obligation[.]"  *White Constr. Co. v. Martin*

*Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1325, n. 26 (M.D. Fla. 2009) (emphasis added). *See also Excess Risk Underwriters*, 208 F. Supp. at 1316-18 (rejecting the plaintiff's assertion that its nondisclosure agreement with defendant "'created a confidential relationship … that imposed a fiduciary obligation'" and dismissing the plaintiff's fiduciary duty claim on the basis that it was interwoven with the plaintiff's contract claim). Plaintiff's new paragraph does not address – let alone correct – the deficiencies identified by the Court.

Indeed, setting aside their facial insufficiency and implausibility, Mr. Kidwell's alleged conversations with Mr. Carbonella in December 2008 clearly did not create a fiduciary relationship between AVM and plaintiff. To the contrary, plaintiff's breach of fiduciary duty claim remains inextricably intertwined with the formation and alleged breaches of the Agreement. First, according to the Amended Complaint, the newly pleaded statements by Mr. Kidwell were made at the very same time the parties entered into their alleged oral confidentiality agreement. (Am. Compl. ¶¶ 17, 23, 115.) Second, the parties' written Agreement signed a month later fully integrated any such alleged statements along with the parties' prior oral confidentiality agreement, since the writing expressly states that it "constitutes the entire agreement of the parties with respect to the Information and supersedes any other agreements previously executed that related to the Information." (Am. Compl., Ex. A.) Third, pursuant to the Agreement, under which AVM and plaintiff were to mutually share Information (as defined therein), each party agreed only that such "Information will be kept confidential and will not be utilized without some further agreement of compensation" and to "take all reasonable precautions to prevent the theft or unauthorized use of the Information [and] immediately notify the other party of any unauthorized use." (*Id.*) There were no advisory or other obligations

imposed on either party.[2]

Plaintiff nevertheless continues to assert that AVM breached *both* the Agreement *and* supposed fiduciary duties by virtue of the *exact same conduct – i.e.*, by allegedly disclosing plaintiff's confidential information to third-parties, using such information itself, and failing to notify plaintiff of that unauthorized use. (Am. Compl. ¶ 119.) None of the acts complained of in support of the breach of fiduciary duty claim is independent of the acts that allegedly breached the Agreement. Therefore, plaintiff's breach of fiduciary duty claim fails. *See Branch Banking & Trust Co. v. U.S. Bank Nat. Ass'n*, 2008 WL 4186982, at *5 ("A cause of action for breach of fiduciary duty that is merely duplicative of a breach of contract claim cannot stand[.]"); *Branch Banking & Trust Co. v. U.S. Bank Nat. Ass'n*, 2009 WL 1324163, at *2 (finding that amended breach of fiduciary duty allegations "peppered" with "recitation that confidence was reposed and a trust accepted. . . [did] not indicate that [a party] 'stepped out of its contractual role' or 'developed a special relationship and undertook a duty' beyond those envisioned under [the contract]") (internal citations omitted); *see also Fed. Deposit Ins. Corp. v. Law Office of Rafael Ubieta, P.A.*, No. 12-21864, 2012 WL 5307152, at *8 (S.D. Fla. Oct. 29, 2012) (dismissing breach of fiduciary duty claim as duplicative of breach of contract claim where the defendants' "alleged breach of the fiduciary duty ... [was] almost inseparable from the conduct [the plaintiff] allege[d] qualifie[d] as a breach of contract").

---

[2] Indeed, at best for plaintiff, its new allegation in paragraph 115 purports to add vague service obligations on the part of AVM concerning plaintiff's so-called innovations and ideas, such as guidance and assistance in the repo market, that were plainly not included in and would fundamentally alter the Agreement. The Agreement expressly limits itself to protections against disclosure and use of the "Information" and constitutes the *entire agreement* concerning such Information. (Am. Compl., Ex. A). *See Ungerleider v. Gordon*, 214 F.3d 1279, 1282 (11th Cir. 2000) ("[E]vidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract. This rule applies when the parties intend that a written contract incorporate their final and complete agreement.") (internal citation and quotation marks omitted).

In sum, plaintiff's newly alleged facts, if accepted under FRCP 8 for pleading purposes, do nothing to impose an extra-contractual fiduciary obligation on AVM. Because plaintiff has already been afforded one opportunity to amend, there is no basis to believe that further amendments would be anything but futile and a wasteful use of the Court's and the parties' resources. Accordingly, dismissal should be with prejudice. *See, e.g.*, *Woide v. Fed. Nat'l Mortg. Ass'n*, No. 15-1929, 2016 WL 4567132, at *3 (M.D. Fla. Sept. 1, 2016).

### B. Plaintiff's Claims for Fraud and Constructive Fraud Must Be Dismissed.

In its Amended Complaint, plaintiff alleges that AVM defrauded plaintiff because (1) AVM did not intend to keep plaintiff's confidential information confidential when it made its promise to plaintiff, and (2) AVM failed to disclose material facts which it had an obligation to disclose based on a fiduciary duty it owed to plaintiff. (Am. Compl. ¶¶ 125-140.) Plaintiff's assertions of fraud remain insufficient under both of those theories.

First, the Amended Complaint fails to cure the deficiencies in plaintiff's fraudulent inducement claim and, indeed, adds absolutely no new facts. The Court held that "[t]o the extent that Plaintiff alleges fraud in the inducement based upon Defendant's allegedly false representations that it would keep Plaintiff's information confidential, this is a promise of future performance, not a statement of past or present existing fact." (Decision at 16.) The Court further explained that plaintiff's "bald assertion" that AVM did not intend to keep its promise was "not sufficient to state, much less with particularity, Defendant's intent not to keep a promise." (*Id.*)

In the Amended Complaint, plaintiff reiterates the allegation from its original Complaint that AVM met with the New York Mercantile Exchange on February 13, 2009. (Am. Compl. ¶ 39.) Based on that meeting, plaintiff previously contended: "AVM had no intention of keeping [plaintiff's] confidential information confidential. To the contrary, immediately after obtaining

this information, AVM set up meetings with third parties to disclose and use this information[.]" (Compl. ¶ 126.)  Now, without pleading any additional facts (because there are none), plaintiff speculates further that: "[a] meeting with the New York Mercantile Exchange takes time to schedule"; [t]he fact that this meeting occurred so quickly after the January 29 meeting shows that AVM started working right away to set it up"; and "it is entirely possible that AVM had the Mercantile Exchange meeting set up prior to the January 29 meeting."  (Am. Compl. ¶ 128.)  Hence, in response to what this Court found to be a "bald assertion" of intent, plaintiff restated a fact already pleaded (the existence of the February 13, 2009 meeting) and coupled it with pure innuendo.  For good reason, that is not nearly enough to sustain a fraud claim.

The "plausibility standard [under 9(b)] . . . asks for more than a *sheer possibility* that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).  Moreover, Rule 9(b) forces a plaintiff to offer more than "mere conjecture." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1317 (11th Cir. 2002).  At best, the Amended Complaint offers nothing more than conjecture that AVM *may* have scheduled that meeting before entering the Agreement and that this *may* have been because it planned ahead of time to breach the Agreement.  But such speculation and bald assertions are not enough to state a claim for fraud in the inducement, and that theory should therefore be rejected for the same reason it was rejected on the original Complaint.  Indeed, plaintiff once again cites only AVM's *subsequent* alleged failure to keep its promise under the Agreement as the supposed basis for AVM's intent not to perform in the first place. *See Biscayne Inv. Grp., Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 255 (Fla. 3d DCA 2005) ("[A] mere promise not performed ... by itself, cannot form the predicate for actionable fraud."); *Excess Risk Underwriters*, 208 F. Supp. at 1318-19 (dismissing claim for fraudulent inducement premised on an allegation that the

defendant never intended keep its contractual promises, because such allegations "constitute the heart of the breach of contract claims" and, further, "the contracts at issue … contain merger clauses that supersede all prior representations and agreements.") Simply stated, plaintiff has not asserted a fraudulent inducement claim; it has asserted a claim for breach of contract.

Second, plaintiff fails to plead fraud by omission. In the Decision, the Court expressed that it could not determine what omissions plaintiff was attempting to allege; nor could it assess "whether Plaintiff alleges that Defendant omitted material facts so as to induce Plaintiff to enter into the Agreement or whether these omissions are related to any alleged concealment of Defendant's actions in relation to Plaintiff's argument that it was prevented from enforcing its legal rights under the Agreement." (Decision at 16.) In its Amended Complaint, plaintiff purports to identify the alleged material omissions as: "AVM's intention to use [plaintiff's] confidential information for AVM's sole benefit"; AVM's secret meetings with third parties; "AVM's use and disclosure of [plaintiff's] confidential information"; and "AVM's use of [plaintiff's] information in connection with AVM DRX." (Am. Compl. ¶131.) Plaintiff also alleges again that AVM "had a duty to disclose these facts, including because AVM owed [plaintiff] a fiduciary duty." (*Id.* ¶133.)

As set forth above, because plaintiff has not asserted the existence of a fiduciary duty on the part of AVM, such a duty cannot form the basis of an omission claim. Further, and even more fundamentally, AVM's supposedly fraudulent omissions arise from the very same conduct on which plaintiff predicates its claim for breach of contract. The operative provisions of the Agreement, cited above, state that "the Information will be kept confidential and will not be utilized without some further agreement of compensation" and that each party "will take all reasonable precautions to prevent the theft or unauthorized use of the Information [and]

immediately notify the other party of any unauthorized use." (Am. Compl., Ex. A.) If, as plaintiff alleges, AVM secretly disclosed plaintiff's ideas to third parties without notifying plaintiff and used those ideas itself for its own benefit, while that conduct could have breached the Agreement, it could not have at the same time given rise to fraudulent omissions *independent* of the Agreement. Further, it bears repeating that according to the Amended Complaint, AVM only received plaintiff's confidential information in the first place after entering into the oral then written Agreement. Plaintiff's rhetoric and hyperbole cannot transform a breach of contract claim into one for fraud. Plaintiff's fraud by omission claim therefore fails.

For these reasons, plaintiff's claims for fraud and constructive fraud fail and should be dismissed. Because plaintiff has already been given an opportunity to amend, and further leave to amend would be both futile and a wasteful use of the Court's and the parties' resources, these claims should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, plaintiff's claims for breach of fiduciary duty (Count IV), fraud (Count V), and constructive fraud (Count VI) should be dismissed with prejudice.

**REQUEST FOR HEARING**

AVM respectfully requests oral argument on this motion. The underlying facts of this case arise from a sophisticated financial and historical setting, *i.e.*, the global repo market. Additionally, in this motion, AVM presented several arguments based on numerous discrete principles of law. Given these factual and legal complexities, AVM respectfully submits that the Court may benefit from approximately one hour of oral argument on this motion.

Respectfully submitted,

*/s/ Michael R. Tein*
Michael R. Tein
mtein@lewistein.com
Fla. Bar No. 993522
LEWIS TEIN PL
3059 Grand Avenue, Ste. 340
Coconut Grove, Florida 33133
(305) 442-1101 (phone)
(305) 442-6744 (fax)

Zachary D. Rosenbaum
zrosenbaum@lowenstein.com
*Admitted pro hac vice*
Joseph A. Fischetti
jfischetti@lowenstein.com
*Admitted pro hac vice*
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700 (phone)
(212) 262-7402 (fax)

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

>  */s/ Michael R. Tein*
> MICHAEL R. TEIN