UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-80905-BLOOM/Valle

XP GLOBAL, INC.,

    Plaintiff,

v.

AVM, L.P.,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant AVM, L.P.'s ("Defendant") Motion to Dismiss, ECF No. [45] (the "Motion"), seeking to dismiss Counts IV, V, and VI of Plaintiff XP Global, Inc.'s ("Plaintiff") Amended Complaint, ECF No. [38]. The Court has carefully reviewed the Motion, all supporting and opposing submissions, the record in this case, and applicable law. For the reasons set forth below, the Motion is granted in part and denied in part.

### I. BACKGROUND

The Court set forth the facts of this case in its prior Order, ECF No. [37], granting in part and denying in part Defendant's first Motion to Dismiss, ECF No. [17]. However, given their pertinence to the Court's instant analysis, those facts bear repeating.

This action primarily involves financial transactions called repurchase agreements, also known as "repos," which are short-term financial arrangements in which cash is exchanged for collateral. ECF No. [38] at ¶ 1. According to Plaintiff, in 2008, Plaintiff developed "revolutionary ideas" to fix problems with the repo market largely through a repo exchange. *Id.* Around December 2008, Plaintiff's owner and Chief Executive Officer, Michael Carbonella, met

with Jeff Kidwell, one of Defendant's employees, during which time Mr. Carbonella provided Mr. Kidwell with basic details about Plaintiff's idea. *Id.* at ¶¶ 14-17. Mr. Carbonella specifically told Mr. Kidwell that everything being communicated needed to be kept confidential, to which Mr. Kidwell agreed. *Id.* at ¶ 17. Mr. Carbonella and Mr. Kidwell soon after met and continued their "high-level" discussions about Plaintiff's ideas, and a formal meeting between Plaintiff and Defendant was arranged for January 29, 2009. *Id.* at ¶¶ 23-25. Prior to this meeting, on January 29, 2009, Plaintiff and Defendant entered into a Mutual Confidentiality Agreement (the "Agreement"). *Id.* at ¶¶ 26-28; *see also* ECF No. [38-1]. The Agreement provided, *inter alia*, that "the parties agree that the Information [exchanged by the parties] will be kept confidential and will not be utilized without some further agreement of compensation by the Receiving Party [*i.e.* Defendant] . . . ." ECF No. [38-1] at 1. That same day, after the Agreement was signed, Plaintiff gave Defendant a detailed presentation about its ideas, including specific details about the repo exchange that Plaintiff asserts it would not have disclosed if Defendant had not signed the Agreement. ECF No. [38] at ¶¶ 31-32.

Plaintiff alleges that following the January 29, 2009 meeting, Defendant immediately started working to implement Plaintiff's ideas without including or informing Plaintiff, in violation of the Agreement. *Id.* at ¶ 37. According to Plaintiff, on February 13, 2009, Mr. Kidwell, on behalf of Defendant, met with the New York Mercantile Exchange and the New York Stock Exchange on February 13, 2009 and March 12, 2009, respectively, about a repo exchange and implementation of Plaintiff's ideas. *Id.* at ¶¶ 39-41. Around March 2009, Defendant also met with Bank of New York about the repo exchange and, on May 5, 2009, Defendant hired a new employee to spearhead the repo exchange. *Id.* at ¶¶ 45, 53. Defendant also held a meeting with the Federal Reserve. *Id.* at ¶ 51. Plaintiff alleges that Defendant never

told Plaintiff about any of these meetings and "deliberately hid" its conduct from Plaintiff. *Id.* at ¶ 56.

Plaintiff alleges that Defendant used Plaintiff's ideas to create its repo exchange product, AVM DRX. *Id.* at ¶ 63. Defendant purportedly does $80 billion in daily repo transactions. *Id.* at ¶ 64. According to Plaintiff, Defendant entered into confidential agreements with third parties such as the Federal Reserve and BNY Mellon to use Plaintiff's ideas to create repo exchanges, which were launched in 2013. *Id.* at ¶ 65. Plaintiff alleges that Defendant has "earned and continues to earn revenue from those agreements, and thus from [Plaintiff's] ideas." *Id.* at ¶ 66. In 2014, a whistleblower allegedly told Mr. Carbonella about Defendant's conduct, which Plaintiff maintains it did not know, and could not have known, because Defendant "hid its unlawful conduct" from Plaintiff. *Id.* at ¶ 68-69.

Based on these allegations, Plaintiff filed suit on June 3, 2016, asserting eight counts against Defendant, including misappropriation of trade secrets pursuant to 18 U.S.C. §§ 1836 and 1839 and Fla. Stat. § 688.001 (Counts I and II); breach of contract (Count III); breach of fiduciary duty (Count IV); fraud (Count V); constructive fraud (VI); conversion (VII); and unjust enrichment (Count VIII). ECF No. [1]. On July 25, 2016, Defendant filed its first Motion to Dismiss, ECF No. [17], seeking dismissal of Counts III through VIII of Plaintiff's initial Complaint, which the Court granted in part on September 19, 2016, ECF No. [37]. Counts IV through VIII were dismissed, and Plaintiff was granted leave to amend Counts IV through VI. ECF No. [37]. Plaintiff thereafter filed an Amended Complaint on September 27, 2016. ECF No. [38]. Defendant now moves to dismiss Counts IV through VI of Plaintiff's Amended Complaint pursuant to Rule 12(b)(6).

## II. LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). Although the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted).

### III. DISCUSSION

Defendant seeks dismissal of Plaintiff's claims for breach of fiduciary duty (Count IV), fraud (Count V), and constructive fraud (Count VI) because they, as alleged in Plaintiff's Amended Complaint, are not independent of Plaintiff's claim for breach of contract. Alternatively, Defendant claims that these claims are insufficiently pled.

The Florida Supreme Court has limited the application of the economic loss rule to products liability cases. *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399 (Fla. 2013). However, "*Tiara* did not upset 'fundamental contractual principles' which continue to delineate the general boundary between contract law and tort law regardless of the breadth of the economic loss doctrine." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302 (S.D. Fla. 2014) (citing *Tiara*, 110 So. 3d at 408 (Pariente, J., concurring)). That is, "[f]undamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." *Freeman v. Sharpe Res. Corp.*, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (citing *Tiara*, 110 So. 3d at 407-09). Certainly, though, a tort claim can be stated alongside a claim for breach of contract where the plaintiff has alleged conduct that does not itself constitute breach of the contract at issue.

#### 1. Breach of Fiduciary Duty (Count IV)

"The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) breach of a duty owed by the fiduciary; and (3) proximate cause." *Combe v. Flocar Inv. Grp. Corp.*, 977 F. Supp. 2d 1301, 1307 (S.D. Fla. 2013) (citing *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002)). "[A] fiduciary relation exists between two persons when one of

them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation." *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002).

In its prior Order dismissing Count IV of Plaintiff's initial Complaint, the Court explained that Plaintiff "failed to set forth sufficient facts to demonstrate that a fiduciary relationship existed outside of the Agreement, including, *inter alia*, how Defendant's possession of Plaintiff's confidential information or Defendant's greater bargaining power created a fiduciary relationship." ECF No. [37] at 10. Plaintiff has attempted to cure that deficiency with allegations in its Amended Complaint that Mr. Kidwell, on behalf of Defendant, made statements to Mr. Carbonella during and shortly after the December 2008 meeting that Defendant would use Plaintiff's confidential information to benefit Plaintiff, such as by using Defendant's experience, reputation, and connections in the Repo industry to help Plaintiff implements its ideas, and by guiding and advising Plaintiff regarding the implementation of Plaintiff's ideas. ECF No. [38] at ¶ 115. According to the Amended Complaint, Mr. Kidwell made these statements to Mr. Carbonella in recognition that Plaintiff did not have the connections in the Repo industry to effectively implement its ideas. *Id.*

Plaintiff argues that the allegations mentioned above set forth sufficient facts to demonstrate that a fiduciary relationship existed outside of the Agreement. Specifically, Plaintiff argues that these allegations plead that "(a) it was dependent on [Defendant], (b) [Defendant] acknowledged this dependency, (c) [Defendant] promised to advise and guide [Plaintiff], while acting in [Plaintiff's] best interest, and (d) [Plaintiff] placed trust in [Defendant], which accepted that trust." ECF No. [52] at 5. Defendant argues that the facts pleaded throughout the Amended Complaint establish only that Plaintiff and Defendant entered into the Agreement, which contained mutual use and confidentiality obligations, at arm's-length. ECF No. [45] at 5.

The Court finds that the Amended Complaint, like Plaintiff's initial Complaint, fails to set forth sufficient facts to demonstrate that Defendant took on fiduciary duties exceeding its obligations under the Agreement.  Although Plaintiff attempts to characterize Defendant's alleged fiduciary duties – namely, to provide Plaintiff with guidance and assistance in the repo market – as "exceeding its obligations under the Agreement[,]" ECF No. [52] at 7, the Amended Complaint establishes that those fiduciary duties remained inextricably intertwined with the confidential information disclosed by Plaintiff, *see* ECF No. [38] at ¶ 116 ("Pursuant to its *fiduciary duty*, [Defendant] was only permitted to use [Plaintiff's] *confidential information* as permitted by [Plaintiff], and for the benefit of [Plaintiff].") (emphasis added); *id.* at ¶ 142 ("[Defendant] and [Plaintiff] had a *confidential and fiduciary relationship*, under which [Plaintiff] provided [Defendant] with *[Plaintiff's] confidential information* (namely all of *[Plaintiff's] confidential information* relating to the creation and implantation of a Repo exchange that does not qualify as a trade secret), and [Defendant] undertook the obligation to keep that *information confidential*.") (emphasis added).  This connection to Plaintiff's confidential information is dispositive, as it renders Defendant's alleged fiduciary duties subject to the Agreement's integration clause and, therefore, the agreement itself.  *See* ECF No. [38-1] at 2 ("[The] Agreement constitutes the entire agreement of the parties *with respect to the Information* and supersedes any other agreements previously executed that *related to the Information*.") (emphasis added).  Thus, given their connection to Plaintiff's confidential information, the fiduciary duties alleged in the Amended Complaint did not exist outside of the Agreement.

In any event, even if Plaintiff had set forth sufficient facts to demonstrate that a fiduciary relationship existed outside of the Agreement, Plaintiff's Amended Complaint – like its initial

Complaint – offers only one allegation as to how Defendant breached the alleged fiduciary relationship: "*by disclosing and using [Plaintiff's] confidential information* for [Defendant's] sole benefit, without [Plaintiff's] knowledge or consent."[1] *Id.* at ¶ 119 (emphasis added). Such alleged conduct is expressly contemplated by the terms of the Agreement, which provide in relevant part: "[T]he information *will be kept confidential and will not be utilized* without some further agreement of compensation. . . . [T]he parties further agree that they will take all reasonable precautions to prevent the theft or unauthorized use of the Information [and] will immediately notify the other party of any unauthorized use or disclosure . . . ." ECF No. [38-1] at 1(emphasis added). Plaintiff's breach of contract claim under Count III recognizes as much: "[Defendant] breached, and is breaching, the Agreement, *by . . . [p]roviding [Plaintiff's] confidential information . . . to third parties . . . and [u]sing [Plaintiff's] confidential information . . . .*" ECF No. [38] at ¶ 106 (emphasis added). As such, Plaintiff's claim for breach of fiduciary duty relies solely on the same alleged conduct forming the basis of Plaintiff's claim for breach of contract, and is therefore barred by the independent tort doctrine. *See Federal Deposit Ins. Corp. v. Law Office of Rafael Ubieta*, P.A., 2012 WL 5307152, at *8 (S.D. Fla. Oct. 29, 2012) (dismissing fiduciary duty claim as duplicative of contract claim where the defendants' "alleged breach of the fiduciary duty . . . [was] almost inseparable from the conduct [the plaintiff] allege[d] qualifie[d] as a breach of contract").[2] Plaintiff's breach of fiduciary claim is therefore dismissed.

---

[1] To the extent that the additional allegations made in the Amended Complaint relate to "conduct outside the Agreement," as Plaintiff asserts, *see* ECF No. [52] at 7, such conduct is simply that which Defendant agreed to undertake in the future following the formation of the Agreement; it is not the conduct that Plaintiff alleges formed the basis of Defendant's breach of fiduciary duty owed to Plaintiff.

[2] Plaintiff makes the blanket assertion that because the Florida Supreme Court's decision in *Tiara Condo* restricted the economic loss rule to products liability actions, cases that evaluated fiduciary duty claims in the context of the economic loss rule prior to that decision, such as *Federal Deposit*, are inapposite here. ECF No. [52] at 6. The Court disagrees. In her concurring opinion in *Tiara Condo*, Justice Pariente

### 2. Fraud and Constructive Fraud (Counts V and VI)

"Generally, the fraudulent statement must concern a past or existing fact." *Gemini Investors III, L.P. v. Nunez*, 78 So. 3d 94, 97 (Fla. 3d DCA 2012). "However, if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform, such a promise may also constitute a fraudulent misrepresentation." *Prieto v. Smook, Inc.*, 97 So. 3d 916, 917-18 (Fla. 4th DCA 2012) (quoting *Mejia v. Jurich*, 781 So .2d 1175, 1177 (Fla. 3d DCA 2001)). Further, "[f]raud also includes the intentional omission of a material fact." *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001). "The classic illustration of fraud is where one party having superior knowledge intentionally fails to disclose a material fact, which is not discoverable by ordinary observation . . . ." *Nessim v. DeLoache*, 384 So. 2d 1341, 1344 (Fla. 3d DCA 1980) (citations omitted).

"Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely . . . but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1240 (Fla. 1996) (citation omitted).

> One who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud. When this happens and the defrauding party also refuses to perform the contract as it stands, he commits a second wrong, and a separate and distinct cause of action arises for the breach of contract. The

---

explained that common law contract principles behave similarly to the economic loss rule in that, for a party in contractual privity to bring a valid tort claim, the party must still prove the tort is independent of any breach of contract. *Tiara*, 110 So. 3d at 408 (Pariente, J., concurring); *see also Freeman*, 2013 WL 2151723, at *8 (citing *Tiara*, 110 So. 3d at 408 (Pariente, J., concurring)). As "[t]hese contract and tort principles have not changed simply because the economic loss rule is once again restricted to products liability actions[,]" cases that have applied the economic loss rule but nevertheless relied on these principles to dismiss breach of fiduciary duty claims failing to allege facts independent of a breach of contract claim, *see, e.g.*, *Federal Deposit Ins. Corp.*, 2012 WL 5307152, at *8, remain instructive in this context.

9

> same basic transaction gives rise to distinct and independent causes of action which may be consecutively pursued to satisfaction.

*Id.* at 1239 (citation omitted). "Florida courts have further explained that the decision in *HTP* allows an award of punitive damages for fraudulent inducement despite additional claims for breach of contract." *HGI Associates, Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 877 (11th Cir. 2005) (citing *Connecticut Gen. Life Ins. Co. v. Jones*, 764 So. 2d 677, 680-82 (Fla. 1st DCA 2000)).

In addition to the Rule 8(a) plausibility pleading requirement, Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) thus forces a plaintiff to "offer more than mere conjecture," *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and "requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) requires that the complaint state the "who, what, when where, and how" of the alleged misconduct). The purpose of the Rule 9(b) particularity requirement is to "alert [ ] defendants to the precise misconduct with which they are charged and protect[ ] defendants against spurious charges of immoral and fraudulent

behavior." *Ziemba*, 256 F.3d at 1202 (internal quotations omitted). "Essentially, the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) (quotations omitted); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) ("The rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. . . .") (quotations omitted).

"Under Florida law, the essential elements of a cause of action for fraud are: (1) a false statement of fact; (2) known by the defendant to be false at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage or injury. *Pitts Sales, Inc. v. King World Prods., Inc.*, 383 F. Supp. 2d 1354, 1362-63 (S.D. Fla. 2005) (citing *National Ventures, Inc. v. Water Glades 300 Condom. Ass'n*, 847 So. 2d 1070, 1074 (Fla. 4th DCA 2003); *Ward v. Atlantic Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001)).

    a. **Fraud**

In its prior Order dismissing Count V of Plaintiff's Complaint, the Court explained with respect to Plaintiff's fraud in the inducement claim that Plaintiff's allegation that Defendant had no intention of keeping Plaintiff's information confidential and that Defendant's promise to the contrary amounted to a fraudulent misrepresentation was, "without more, [] not sufficient to state, much less with particularity, Defendant's intent not to keep a promise." ECF No. [37] at 16. Additionally, with respect to Plaintiff's fraud by omission claim, the Court explained that it was "unclear [] precisely what these omissions [were] and whether Plaintiff alleges that

Defendant omitted material facts so as to induce Plaintiff to enter into the Agreement or whether these omissions [were] related to any alleged concealment of Defendant's actions in relation to Plaintiff's argument that it was prevented from enforcing its legal rights under the Agreement." *Id.*

Plaintiff has attempted to cure the deficiency relating to its fraud in the inducement claim not by way of setting forth any new factual allegations, but instead by raising an inference from facts already alleged in the initial Complaint – facts which the Court previously found insufficient to plead a fraudulent intent on the part of Defendant. Specifically, in the initial Complaint, Plaintiff alleged that "immediately after" Defendant obtained Plaintiff's confidential information at the January 29, 2009 meeting, Defendant "set up meetings with third parties to disclose and use this information for [Defendant's] benefit, without the knowledge or consent of [Plaintiff]." ECF No. [1] at ¶ 126; *see also* ECF No. [38] at ¶ 127. Plaintiff now asserts in its Amended Complaint that, as an example, the timing of the alleged secret meeting that occurred between Defendant and the New York Mercantile Exchange on February 13, 2009 – "just two weeks after" the January 29, 2009 meeting – "shows that [Defendant] started working right away to set it up, with the intention of using [Plaintiff's] confidential information in a manner contrary to its representations." ECF No. [38] at ¶ 128. Plaintiff argues that these "extremely strong circumstantial allegations" show Defendant's lack of intent to keep its promise. ECF No. [52] at 10.

The Court is not persuaded, and finds that the Amended Complaint, like the initial Complaint, fails to allege with the particularity required under Rule 9(b) Defendant's intent not to keep its promise to keep Plaintiff's information confidential.[3] The Court recognizes that

---

[3] Plaintiff's reliance on *Wadlington v. Continental Med. Servs., Inc.*, 907 So. 2d 631, 633 (Fla. 4th DCA 2005) (allegation that appellee "had no intention of performing the act when the representation was

12

whatever Defendant's intent was at the time it entered into the Agreement with Plaintiff, such a fact is "peculiarly within the possession and control" of Defendant. *Universal City Stuidos v. Nissim Corp.*, 2015 WL 1124704, at *3 (S.D. Fla. March 12, 2015) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *Ceant v. Aventura Limousine & Transp. Svc., Inc.*, 874 F. Supp. 2d 1373, 1378-79 (S.D. Fla.2012)). However, the inference that Plaintiff asks this Court to make in its favor – an inference that stems from the very same factual allegations set forth in the initial Complaint – is based on mere conjecture and speculation. *See Clausen*, 290 F.3d at 1313. That Defendant at some point arranged for a meeting with the New York Mercantile Exchange to take place on February 13, 2009 does not speak to Defendant's intent leading up to and during its meeting with Plaintiff two weeks prior.

That said, with respect to Plaintiff's fraud by omission claim, the Court is satisfied that the Amended Complaint specifically alleges that certain omissions were made by Defendant – namely, Defendant's alleged failure to notify Plaintiff that following their January 29, 2009 meeting Defendant disclosed Plaintiff's confidential information during several meetings with other institutions – and that such omissions were intended to prevent Plaintiff from pursuing use of its own ideas and acting to enforce its rights under the Agreement. *See* ECF No. [38] at ¶¶ 131-32, 135. Furthermore, although Defendant is correct to point out that those alleged omissions are expressly contemplated by the terms of the Agreement, *see* ECF No. [38-1] at 2 (requiring, *inter alia*, that each party "immediately notify the other party of any unauthorized use

---

made" sufficient to survive dismissal) and *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001) (allegations that appellee knew representations were false when made and had no intention of performing them sufficient to survive dismissal) is misplaced as neither case involved application of the federal pleading standards under Rule 8 and Rule 9(b) and both predated *Twombly*. *See Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1386-87 (S.D. Fla. 2014) (conclusory allegation that defendant "knew or should have known that its representation was false" without other supporting facts insufficient to plead fraudulent misrepresentation) (citing *Twombly*, 550 U.S. at 555).

or disclosure" of Plaintiff's confidential information), the Eleventh Circuit has made clear that under Florida damages law, "punitive damages are awardable for sufficient fraudulent inducement claims even when those claims involve facts related to a collateral breach of contract claim." *HGI Associates, Inc.*, 427 F.3d at 876; *see also HTP, Ltd.*, 685 So. 2d at 1239 (holding that a fraudulent inducement is a separate and independent tort when compared to a breach of contract). Here, Count V of Plaintiff's Amended Complaint requests punitive damages and sets forth sufficient factual allegations to support a fraud by omission claim. *See Pitts Sales, Inc.*, 383 F. Supp. 2d at 1362-63. Accordingly, Plaintiff's fraud claim will be dismissed only insofar as it is based on a theory of fraud in the inducement relating to Defendant's allegedly false representations that it would keep Plaintiff's information confidential.

      **b. Constructive Fraud**

"Under Florida law, constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) (internal quotation marks and citation omitted). "To state a claim for breach of a fiduciary or confidential relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Id.* (internal quotation marks and citation omitted). However, "[c]onstructive fraud will not lie where the parties are dealing at arms length because there is no duty imposed on either party to protect or benefit the other." *Id.* As already discussed, the Amended Complaint fails to set forth legally sufficient facts to demonstrate that a fiduciary relationship existed outside of the Agreement. Plaintiff's claim for constructive fraud, like its claim for breach of fiduciary duty, is therefore barred by the independent tort doctrine. As such, this claim is dismissed.

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [45]**, is **GRANTED IN PART** and **DENIED IN PART**.

2. Counts IV (fiduciary duty) and VI (constructive fraud) of the Amended Complaint are **DISMISSED WITH PREJUDICE**.

3. Defendant is to file its Answer to the Amended Complaint **no later than November 28, 2016.**

**DONE AND ORDERED** in Miami, Florida this 14th day of November, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record